The **NATIONAL RAILROAD PASSENGER CORPORATION,**
Plaintiff-Appellee,

v.

The **CHESAPEAKE AND OHIO RAILWAY COMPANY,**
Defendant-Appellant.

No. 76–1472.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 29, 1976.

Decided March 4, 1977.

**138**

Robert E. English, Chicago, Ill., Joseph C. Wallace, Indianapolis, Ind., for defendant-appellant.

Sheldon A. Breskow, Deputy Atty. Gen., Indianapolis, Ind., for intervenor.

Andrew J. Valentine, Washington, D. C., Karl J. Stipher, Indianapolis, Ind., for plaintiff-appellee.

Before HASTINGS, Senior Circuit Judge,* MOORE, Senior Circuit Judge ** and SPRECHER, Circuit Judge.

SPRECHER, Circuit Judge.

The sole issue on this appeal is whether there exist any grounds for vacating an arbitration award confirmed by the district court pursuant to 9 U.S.C. §§ 9, 13.

### I

The Rail Passenger Service Act of 1970, 45 U.S.C. § 501 *et seq.* [hereinafter referred to as the "Amtrak Act" or the "Act"] authorized the creation of the National Railroad Passenger Corporation [hereinafter referred to as "Amtrak" or "NRPC"] for the purpose of providing intercity rail passenger service.

The Act authorized Amtrak to contract with railroads to relieve them of their responsibility for the provision of such service, 45 U.S.C. § 561(a)(1), and to obtain "the use of tracks and other facilities and the provision of services on such terms and conditions as the parties may agree." 45 U.S.C. § 562(a). Amtrak and the Chesa-

peake and Ohio Railway Company [hereinafter referred to as "C & O"] entered into two contracts dated April 16, 1971: the National Railroad Passenger Corporation Agreement [hereinafter referred to as the "Basic Agreement"] and the National Railroad Passenger Corporation Arbitration Agreement [hereinafter referred to as the "Arbitration Agreement"].

Section 3.1 of the Basic Agreement, *Right to Services,* provides:

Subject to and in accordance with the terms and conditions of this Agreement, Railroad hereby agrees to provide NRPC, over Rail Lines of Railroad, with the services requested by NRPC for or in connection with the operation of NRPC's Intercity Rail Passenger Service, including the carrying of mail and express on Intercity Rail Passenger Trains to the extent authorized by the Act. The initial services with respect to Railroad shall be as provided in Appendix B . . . .

Section 3.2 of the Basic Agreement, *Modification of the Services,* provides in pertinent part:

NRPC shall have the right from time to time to request, and subject to and in accordance with the terms and conditions of this Agreement Railroad hereby agrees to provide, modified or additional services. Such requests shall be made by filing an amendment to Appendix B with Railroad on a date sufficiently in advance of the date upon which such amendment is to become effective to permit adequate joint planning and joint preparation for the modified or additional services provided for in such amendment.

Also, Article Six of the Basic Agreement, *Arbitration,* provides that "any claim or controversy between NRPC and Railroad concerning the interpretation, application, or implementation of this Agreement shall be submitted to binding arbitration in accordance with the provisions of the Arbitra-

---

* Senior Circuit Judge John S. Hastings heard oral argument and participated in the conference of the court, but died before this opinion was submitted to him for approval.

** Senior Circuit Judge Leonard P. Moore of the United States Court of Appeals for the Second Circuit is sitting by designation.

tion Agreement. . . ." Finally, Section 4.5 of the Arbitration Agreement provides that "the arbitrators shall, in reaching a decision, be governed by the provisions and language of the . · . Basic Agreement."

Pursuant to the Act, 45 U.S.C. §§ 521, 522, on January 28, 1971 the Secretary of Transportation designated a basic system within which intercity rail passenger service would be provided. Under the basic system, passenger trains were to be operated between Chicago and Cincinnati. The routes between these two mandatory service points over which Amtrak operated its trains until August 1, 1974 involved the use of Penn Central trackage. The initial services which C & O had agreed to provide Amtrak under Section 3.1 and Appendix B of the Basic Agreement did not include trackage for Amtrak's trains between Chicago and Cincinnati.

However, on August 1, 1974, the Federal Railroad Administration condemned as unsafe portions of the trackage along the Penn Central route and ordered that all passenger and freight service along the route be terminated on the morning of August 2, 1974. Thereupon, Amtrak filed a request under the Basic Agreement to have its trains between Chicago and Cincinnati operated over C & O trackage at the Basic Agreement rate for such services. C & O, however, contended that it was not required by the Basic Agreement to provide the requested service, and, therefore, the terms of the agreement, including its method of compensation, were inapplicable.

On August 2, 1974, Amtrak obtained a temporary restraining order requiring C & O to provide the requested service pending a preliminary injunction hearing. On August 22, 1974, following the hearing, the district court directed the parties to proceed with arbitration and, pending a decision by the arbitrators, issued a preliminary injunction requiring C & O to provide the requested service under the terms and methods of compensation in the Basic Agreement.

On November 7, 1974, the National Arbitration Panel, one member concurring in

part and dissenting in part, filed its award. The decision provided in pertinent part:

1. The panel finds that "modified or additional" service under Section 3.2 of the NRPC Agreement includes service over the Rail Lines of the contracting railroad, whether or not such service is of the kind that has been characterized by . . . [C & O] as "expanded," "substituted," or "emergency" service.

2. The Panel finds that request for "modified or additional" service under Section 3.2 of the NRPC Agreement must be made so as to allow appropriate time for joint planning of the requested service. The Panel finds that the request of the National Railroad Passenger Corporation (Amtrak) on August 1, 1974, did not allow time for proper planning as to a start-up on August 2, 1974, of service of the scope to be provided by Chessie, but did, in view of the consultations and trial run undertaken in the preceding months, allow for proper planning for a start-up of service as of September 1, 1974. The Panel concludes, therefore, that Amtrak is, and has been since September 1, 1974, entitled to the provision of the requested services in accordance with the terms of the NRPC Agreement. . . .

3. As to the period between August 1, 1974, and September 1, 1974, the Panel feels that, in view of the complex and confusing situation which developed, Chessie should be awarded greater compensation than that specified in the NRPC Agreement, and that such compensation should be at a rate equivalent to that of the Standard Detour Agreement.

On March 24, 1974, after a confirmation hearing, the district court confirmed the Panel's decision pursuant to Section 9 of the United States Arbitration Act, 9 U.S.C. § 9, and judgment was entered in accordance with 9 U.S.C. § 13. It is from this decision that C & O appeals.

II

We begin our inquiry with C & O's contention that the parties' contract, the Basic Agreement, rendered the instant trackage

dispute nonarbitrable,[1] and therefore the district court's confirmation of that award must be vacated.

■■■ It is, as C & O argues, "well settled that arbitration is a matter of contract, and a party cannot be required to arbitrate any dispute which he has not agreed to arbitrate." *Butler Products Co. v. Unistrut Corp.*, 367 F.2d 733, 735 (7th Cir. 1966) (citations omitted). However, in making a determination as to whether a particular dispute is subject to arbitration, "the courts have been assigned the limited role of 'ascertaining whether the party seeking arbitration is making a claim which on its face is one governed by the agreement.'" *Galt v. Libbey-Owens-Ford Glass Co.*, 376 F.2d 711, 714 (7th Cir. 1967) (citation omitted).

■■■ Moreover, our power in making even this limited determination is rigidly circumscribed. "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960) (footnote omitted). *See also Carey v. General Electric Co.*, 315 F.2d 499 (2d Cir. 1963). The Supreme Court elaborated on the rationale underlying the limited role of the judiciary in the arbitral context in *United Steelworkers of America v. American Manufacturing Co.*, 363 U.S. 564, 567–68, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960) (footnotes omitted, emphasis added):

> The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. It is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract. *Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator. In these circumstances the moving party should not be deprived of the arbitrator's judgment, when it was his judgment and all that it connotes that was bargained for.*
>
> *The courts, therefore, have no business weighing the merits of the grievance, considering whether . . . there is particular language in the written instrument which will support the claim.* The agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious.

Accordingly, where there is a broad arbitration clause covering all disputes involving the "interpretation, application, or implementation" of a contract, "[i]n the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail . . . ." *Warrior & Gulf, supra*, 363 U.S. at 584–85, 80 S.Ct. at 1354; *Carey, supra*, at 505.

■■■ With these general principles in mind, we find that the trackage dispute between Amtrak and C & O comes within the ambit of the broad arbitration clause of the Basic Agreement. Amtrak contends that Section 3.2 of the Basic Agreement, *Modification of the Services, supra*, requires C & O to provide the requested service over C & O trackage between Chicago and Cincinnati. C & O contends that the requested service is not "modified or additional" service as contemplated by that section of the Basic Agreement. The arbitration clause provides that "any claim or controversy between NRPC and Railroad concerning the interpretation, application, or implementation" of the Basic Agreement shall be submitted to arbitration. In these circumstances, the Supreme Court has stated:

> The union claimed in this case that the company had violated a specific provision of the contract. The company took the

---

1. In view of our disposition of this appeal, it is unnecessary to reach the issue, apparently raised by Amtrak in its brief to this court, that C & O waived all objections to the arbitrability of the trackage dispute.

position that it had not violated that clause. There was, therefore, a dispute between the parties as to "the meaning, interpretation and application" of the collective bargaining agreement. Arbitration should have been ordered. When the judiciary undertakes to determine the merits of a grievance under the guise of interpreting the . . . [arbitration clause], it usurps a function which . . is entrusted to the arbitration tribunal.

*American Manufacturing, supra,* 363 U.S. at 569, 80 S.Ct. at 1347.

Our conclusion on the question of the arbitrability of the instant trackage dispute under the Basic Agreement is supported by the Eighth Circuit's recent decision in *National Railroad Passenger Corp. v. Missouri Pacific Railroad Co.,* 501 F.2d 423 (8th Cir. 1974), interpreting the scope of an identical arbitration clause contained in a Basic Agreement between Amtrak and Missouri Pacific. Amtrak claimed that under the Basic Agreement Missouri Pacific was required, upon request, to provide services over the "Rail Lines" of Texas and Pacific, a 96.5% owned subsidiary of Missouri Pacific. Amtrak based its claim on the fact that the Basic Agreement defined "Rail Lines" to include all Missouri Pacific's "rights to use . . . [the trackage] of others." Missouri Pacific contended that a subsidiary's trackage was not covered by the Basic Agreement. The court found that the "dispute is one 'concerning the interpretation, application, or implementation' of the Basic Agreement and is therefore arbitrable." Accordingly, the court held that it was error for the district court to resolve the merits of the dispute while purportedly making an arbitrability determination.

### III

Similarly, it seems clear to this court that those objections predicated on the language and provisions of the Basic Agreement which C & O has raised as grounds for vacating the arbitral award are in fact directed not toward the arbitrability of the trackage dispute but rather to the merits of the award. In other words, C & O really objects to the interpretation of the Basic Agreement by the arbitrators in their decision and award.

C & O's claims of contract misconstruction may be briefly summarized.[2] C & O first contends that the service requested by Amtrak on August 1, 1974 was an emergency service and the language of Section 3.2 of the Basic Agreement, the section relied upon by the arbitrators, will not support an interpretation which requires C & O to provide emergency services.[3] C & O next contends that under Section 3.2 it only had an obligation to provide "modified or additional" services over its "Rail Lines," and "Rail Lines," as contemplated by the parties' agreement, do not encompass *freight* trackage, such as the C & O trackage at issue in this case.[4] Since the arbitrators were to "be governed by the provisions and language of the . . . Basic Agreement," C & O concludes, the panel's misinterpretation of that agreement requires vacation of the arbitral award.

■ Even if we assume without deciding that C & O is correct in its assertion that the arbitration panel misconstrued the Basic Agreement, "it is settled that upon judicial review of an arbitrators' award "the court's function in . . . vacating an arbitration award is severely limited,' . . being confined to determining whether or

---

2. For the reasons set forth below, it is unnecessary to examine in detail C & O's arguments in support of its conclusions as to the proper interpretation of the pertinent contract provisions.

3. Specifically, C & O relied on the language in Section 3.2 which provides that requests for services under that section were to be made sufficiently in advance to permit joint planning and preparation for services requested. In this regard, the arbitrators concluded that the ser-

vice requested was covered by Section 3.2, but that C & O was entitled to greater compensation for the first month of the service as a consequence of Amtrak's failure to make a timely request for services to begin on August 1, 1974.

4. It is apparently undisputed that the trackage in question has been operated by C & O for freight traffic only since 1950.

not one of the grounds specified by 9 U.S.C. § 10 for vacation of an award exists." *Office of Supply, Republic of Korea v. New York Navigation Co.*, 469 F.2d 377, 379 (2d Cir. 1972) (citation and footnote omitted). Since C & O does not claim that the award was procured improperly or that the arbitrators were partial, corrupt or otherwise engaged in prejudicial misconduct, the only statutory ground upon which C & O's objections could plausibly be based is that "the arbitrators exceeded their powers." 9 U.S.C. § 10(d).

■ The courts are in agreement that arbitrators do not exceed their powers by misconstruing a contract. *See, e. g., Bernhardt v. Polygraphic Co. of America*, 350 U.S. 198, 203 n. 4, 76 S.Ct. 273, 100 L.Ed. 199 (1956); *Amicizia Societa Navegazione v. Chilean Nitrate and Iodine Sales Corp.*, 274 F.2d 805, 808 (2d Cir.), *cert. denied*, 363 U.S. 843, 80 S.Ct. 1612, 4 L.Ed.2d 1727 (1960). It is true that some courts have suggested that an arbitral award may be set aside if it is "completely irrational." *See, e. g., Swift Industries, Inc. v. Botany Industries, Inc.*, 466 F.2d 1125 (3d Cir. 1972); *Marcy Lee Manufacturing Co. v. Cortley Fabrics Co.*, 354 F.2d 42, 43 (1965). However, a recent decision by the Second Circuit indicates that, assuming "irrationality" is a possible ground for vacating an award under the Federal Arbitration Act, its application will be reserved for truly extraordinary circumstances. In *I/S Stavborg v. National Metal Converters, Inc.*, 500 F.2d 424 (2d Cir. 1974),

the court concluded that, although in its judgment the arbitration panel's interpretation of the contract was "clearly erroneous," it was not "irrational" and therefore not subject to judicial revision.

■ Similarly, we believe that C & O's claims "reduce to the proposition that the arbitrators misconstrued the contract", *I/S Stavborg, supra*, at 431, and we find no basis for concluding that interpreting "modified or additional" services to include the service requested by Amtrak on August 1, 1974 or interpreting "Rail Lines" to include *all* C & O trackage is clearly erroneous, much less completely irrational.[5]

Hence, we hold that the alleged contract misconstruction—if it be that—is not a sufficient basis for vacating the panel's award.

## IV

C & O's final contention is that the arbitration award should be vacated because it is not in accord with the Amtrak Act. C & O argues that under the Act Amtrak could have obtained the services at issue in this case in only two ways. Amtrak could have contracted for the operation of its trains over the C & O trackage pursuant to 45 U.S.C. § 562(a).[6] However, C & O contends that such a contract must incorporate the conditions of 45 U.S.C. § 563(a),[7] and the Basic Agreement contains no provisions paralleling the conditions of § 563(a). Since Amtrak failed to contract for the operation of its trains over C & O trackage between

---

5. In view of this conclusion, it is unnecessary for us to decide whether "irrationality" is a ground for vacating an arbitration award under the federal statute. We might note, however, that it is not difficult to see the problems courts might face in an attempt to distinguish serious misinterpretation from irrational construction. *Cf. I/S Stavborg, supra*, at 431. This problem would seem to be exacerbated by the fact that arbitrators are not required to give reasons for their awards. *Sobel v. Hertz, Warner & Co.*, 469 F.2d 1211 (2d Cir. 1972).

6. 45 U.S.C. § 562(a) provides in pertinent part that Amtrak "may contract with railroads . . . for the use of tracks and other facilities and the provision of services on such terms and conditions as the parties may agree."

7. 45 U.S.C. § 563(a) provides that Amtrak . . . may provide intercity rail passenger service in excess of that prescribed for the basic system, either within or outside the basic system, where [Amtrak], based on its own or available marketing studies or other similar reports or information, determines that experimental or expanded service would be justified, if consistent with prudent management. In determining the establishment of the additional routes, [Amtrak] shall take into account the current and the estimated future population and economic conditions of the points to be served, the adequacy of alternative modes of transportation available to those points, and the cost of adding the service. . . .

Chicago and Cincinnati in accordance with § 563(a), Amtrak was required by 45 U.S.C. § 562(c) [8] to go to the Interstate Commerce Commission to obtain what C & O characterizes as the emergency services requested by Amtrak on August 1, 1974. And, since the arbitration panel decided that Amtrak was entitled to the requested services under the Basic Agreement despite the fact that Amtrak failed to follow either of the two avenues for obtaining such services prescribed by the Act, the award must be vacated as in "manifest disregard of the law."

■ It is well settled that an arbitration award will not be vacated on the ground that the arbitrators misinterpreted applicable law. *Sobel, supra,* at 1214; *Office of Supply, Republic of Korea, supra,* at 379. Some courts have read the Supreme Court's decision in *Wilko v. Swan,* 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), to permit vacation of an arbitration award which evidences a "manifest disregard" of applicable law.[9] However, even those courts which have adopted this view have concluded that "this judicially-created addition to . . . 9 U.S.C. § 10 is 'severely limited.'" *Office of Supply, Republic of Korea, supra,* at 380. It is instructive to note that the very language in *Wilko* which has been cited to support the existence of a "manifest disregard" ground for vacating an arbitration award reaffirms the longstanding rule that awards will not be set aside for errors in the interpretation of applicable law:

**8.** 45 U.S.C. § 562(c) provides:
> To facilitate such operations by [Amtrak] as may be deemed by it to be necessary in an emergency, the Commission shall, upon application by [Amtrak], require a railroad to make immediately available tracks and other facilities for the duration of such emergency. The Commission shall thereafter promptly proceed to fix such terms and conditions as are just and reasonable including indemnification of the railroad by [Amtrak] against any casualty risk to which it may be exposed.

**9.** We share the reservations recently expressed by the Second Circuit as to whether the *Wilko* dictum was actually intended to add "manifest disregard" of the law to the statutory grounds for vacating an award in 9 U.S.C. § 10. *I/S Stavborg, supra,* at 431. "How courts are to

Power to vacate an award is limited. While it *may* be true, as the Court of Appeals thought, that a failure of the arbitrators to decide in accordance with the provisions of the Securities Act would "constitute grounds for vacating the award pursuant to section 10 of the Federal Arbitration Act," *that failure would need to be made clearly to appear. In unrestricted submissions . . ., the interpretations of the law by the arbitrators in contrast to manifest disregard are not subject, in the federal courts, to judicial review for error in interpretation.*

*Wilko, supra,* 346 U.S. at 436–37, 74 S.Ct. at 187 (footnotes omitted; emphasis supplied).

■ Assuming without deciding that in an appropriate case an arbitration award may be vacated for a "manifest disregard" of applicable law, this is clearly not such a case. In essence, C & O is asking this court to vacate an award because the arbitrators did not accept C & O's interpretation of various provisions of the Amtrak Act and their effect on the trackage dispute. The statutory provisions relied on by C & O to support its contention that the arbitrators manifestly disregarded the law in making their award have apparently never been construed by the courts. In the absence of any authoritative construction to the contrary, it certainly would not have been unreasonable for the arbitrators to have concluded: (1) that § 562(a) authorized Amtrak to contract for the services in question;[10]

distinguish in the Supreme Court's phrase between 'erroneous interpretation' of a statute . . . and 'manifest disregard' of it, we do not know: one man's 'interpretation' may be another's 'disregard.'" *Id.* at 430 n. 13. Moreover, since arbitrators have no obligation to state the rationale underlying their award, there may be no basis whatsoever for a court to determine whether they have manifestly disregarded the law or simply misinterpreted it. *See Sobel, supra,* at 1214.

**10.** Section 562(a) authorizes Amtrak to "contract with railroads . . . for the use of tracks and other facilities and the provision of services on such terms and conditions as the parties may agree." There is nothing in § 562(a) to suggest that a contract executed pursuant to that section must incorporate con-

and (2) that even if it is assumed that the services requested by Amtrak on August 1, 1974 are properly characterized as emergency services, § 562(c) [11] provides a non-exclusive means for obtaining such services and does not preclude contracting for the services in the Basic Agreement.

Hence, it is by no means clear what the "law" is which C & O claims was *manifestly* disregarded by the arbitrators. Whatever. else the Supreme Court may have meant by its use of that concept in *Wilko*, we are convinced that it could not have meant that arbitration awards could be vacated because they are not in accord with the views of one of the submitting parties as to the proper construction of a statute which has never been authoritatively construed.[12]

Accordingly, we hold that there is no basis for vacating the arbitrators' award in this case on the ground that it evidences a manifest disregard of the law.

For the reasons set forth in this opinion, the judgment of the district court confirming the arbitration award is affirmed.

Affirmed.

ditions parallel to those contained in § 563(a), *supra*, note 7. Moreover, § 563(a) is subject to the interpretation that it only applies where Amtrak is seeking to provide additional service in excess of that provided for in the basic system. In the instant case, Amtrak requested services from C & O which would enable Amtrak not to expand railroad passenger service but rather to continue to provide basic system service between the two mandatory service points of Chicago and Cincinnati until the Penn Central trackage is once again safe for traffic.

We wish to make clear that we are not adopting this construction as the proper one but only attempting to show that the C & O interpretation was not the only possible one.

11. *See* note 8 *supra.*

12. In light of our discussion of the "manifest disregard" issue, it is clear that C & O's contention that the award must be vacated because it compels a violation of the Amtrak Act must also be rejected.