KOPRIVA, J.,
Before this court for disposition are the post-trial motions of the defendant.
A jury trial was held in this matter commencing June 19, 1990 and concluding June 20, 1990. Defendant was convicted on two counts of aggravated assault, bodily injury; two counts of simple assault; disorderly conduct; driving under the influence of alcohol; and resisting arrest. Post-trial motions were timely filed[1] and briefs being received from both Commonwealth and defendant, we will now move to disposition.
Defendant raises two allegations of error. The first allegation deals with the introduction into evidence of Commonwealth’s exhibits nos. 1, 2 and 7. The evidence objected to consists of two knives and one pair of nunchaks. Secondly, defendant charges the court with an improper instruction given to the defendant upon completion of his direct examination. We will address the allegations consecutively.

*327
Did the Court Err When it Permitted Commonwealth Exhibits 1, 2 and 7 To Be Entered into Evidence?

Defendant objected to the introduction of the weapons as being unfairly prejudicial and of little probative value. The weapons were not used by the defendant as part of the criminal acts charged. The bali knife (Commonwealth exh. no. 2) was removed from the right rear pocket of the defendant during the course of his arrest. The sheathed knife (Commonwealth exh. no. 1) was found at or on the driver’s seat of defendant’s vehicle. The nunchaks (Commonwealth exh. no. 7) were found behind the seat of defendant’s truck during the inventory search. Defense counsel argues that presenting the weapons to the jury unfairly prejudiced defendant and was therefore improper in that said weapons in no way proved the elements of the crimes charged.
However, the Commonwealth argues that the weapons were properly admitted as tending to establish the intent of the defendant with respect to the crimes of simple assault, aggravated assault and resisting arrest. Inherent in those crimes is the element of intent to cause bodily injury. (See 18 Pa.C.S. §§5104, 2701 and 2702.) Although the weapons were not actually used at the crime scene, Commonwealth argues the weapons were within reach of defendant and could have been used against the officers had they not been confiscated.
The admissibility of evidence is a matter within the discretion of the trial judge and an appellate court may reverse only upon a showing of abuse of that discretion. Commonwealth v. Wallace, 522 Pa. 297, 561 A.2d 719 (1989). In order for evidence to be admitted in a criminal trial, such evidence must be competent and relevant. Commonwealth v. Lumpkins, 324 Pa. Super. 8, 471 A.2d 96 (1984). Evidence *328 is relevant if it reasonably tends to prove a material fact in issue or supports a reasonable inference regarding the existence of a material fact. Commonwealth v. Davis, 381 Pa. Super. 483, 554 A.2d 104 (1989). However, the trial court may exclude otherwise relevant evidence where such evidence may confuse, mislead or prejudice the jury. Lumpkins, supra.
We found the weapons to be probative of the element of intent to cause bodily injury with regard to the assault charges. Both simple assault and aggravated assault can be proven if it is shown the defendant attempted to cause serious bodily injury. (18 Pa.C.S. §§2701, 2702.) In the case at bar, the presence of the weapons on the person of defendant and in defendant’s vehicle tends to support the inference of an attempt to cause injury. For example, the testimony of Officer Cohn revealed that defendant was reaching for his pocket while the officer was attempting to subdue him. (Trial transcript at 93.) At that point, Officer Cohn noticed a bulge in the pocket and removed the bali knife. (Trial transcript at 93.) The sheathed knife was confiscated from the front seat of defendant’s truck and was within reach of defendant during a portion of the confrontation with the officers. Thus, the fact that weapons were present at the scene is relevant to the Commonwealth’s case in that such evidence tends to establish the material element of defendant’s intent to cause injury to the officers.
Additionally, we find the weapons are relevant to the charge of resisting arrest. The testimony shows that defendant was verbally and physically abusive at the time of arrest. The officers struggled with defendant in order to take him into custody. One of the elements of the offense is the requirement that the defendant employs means justifying or requiring *329 substantial force to overcome the resistance. (18 Pa.C.S. §5104.) The display of the weapons to the jury helps to establish the fact that substantial force was necessary to overcome defendant’s resistance. As Officer Ellis stated, once a weapon is discovered, the officers are .trained to act under the assumption that other weapons are likely to be present. (Trial transcript at 26.) The fact that defendant had access to these types of weapons shows the potential danger the officers assessed and explains their actions that evening. In fact, the defendant’s line of defense was to challenge the nature and degree of the police officers’ conduct towards him. We therefore find the weapons were properly admitted and disagree with defendant’s assertion that he was unfairly prejudiced by the admission. He cannot argue against the police action taken and then prevent their testimony and evidence to challenge such defense. The probative value of the testimony regarding weapons being present at the scene is clearly relevant and goes toward proving elements of the crimes charged. The presentation of the weapons to the jury was not done in an inflammatory manner. The probative value of the exhibits on material facts of this case clearly outweighed any prejudice that may have resulted to defendant from the introduction of the weapons into evidence.

Did the Court Err by Instructing the Defendant Not To Discuss His Testimony with Counsel Upon Completion of the Defendant’s Direct Examination But Prior to the Commencement of Cross-Examination ?

Defense counsel completed his direct examination of defendant late in the day and the trial judge decided to adjourn and commence with *330 cross-examination the following day. The judge instructed defendant as follows:
“I would advise Mr. Glashauser that you are not in any manner to discuss your testimony with your attorney or with anyone else. When you begin your testimony tomorrow, you should not have talked about it with anyone.” (Trial transcript at 229.)
Defendant asserts such instruction was in error and was a denial of defendant’s right to the effective assistance of counsel with regard to the style and substance of his cross-examination testimony.
We note that defense counsel made no objection at the time the instruction was given. Counsel did make passing reference to the instruction at an unrelated sidebar held the following morning. (Trial transcript at 235.) Our review of the trial transcript reveals that no timely objection was made to the instruction and additionally no prejudice was shown to have resulted from the instruction. It is particularly relevant to note that at the time of the instruction, counsel never claimed that he desired to speak with defendant and was prevented from doing so by the instruction.
Despite the timeliness of the obscure objection, at the heart of this issue is the defendant’s right to the assistance of counsel as established by the Sixth Amendment to the federal Constitution. The scope of this right has been the focus of much litigation both at the state and federal level, particularly with regard to an accused’s right to counsel during court recesses occurring in the midst of defendant’s testimony. The Supreme Court addressed the issue in the seminal case of Geders v. United States, 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed. 2d 592 (1976). In Geders, the trial court had ordered the accused not to speak with his attorney during an overnight recess occurring between the accused’s direct and *331 cross-examination. A unanimous court held such order to be reversible error under the Sixth Amendment.[2]
The case at bar is distinguishable on its facts from Geders. The order in Geders barred all communication between defendant and counsel. In the instant matter, the order applied only to discussions involving the ongoing testimony of the defendant. Counsel was permitted to discuss any matters with his client other than the content of cross-examination testimony. The obvious, salient and innocuous purpose of the order was to prevent any improper “coaching” of defendant, and most importantly, to maintain the integrity of the delicate testimonial process.
The Geders decision left open the question of whether a court order forbidding the accused to speak with counsel concerning the accused’s testimony, but permitting consultation on other matters, violates the Sixth Amendment. However, in a recent decision, the court lends support to the proposition that orders barring only communications pertaining to the defendant’s testimony are not a violation of the “right to counsel.” See Perry v. Leeke, _ U.S. _, 109 S.Ct. 594, 102 L.Ed. 2d 624 (1989). In Perry, the court addressed the issue of whether a defendant is entitled to the Sixth Amendment protection during a brief recess taken during the course of the defendant’s testimony. The court found that the trial judge did not violate the accused’s right to *332 counsel by preventing the defendant from speaking with his attorney during a 15-minute recess taken at the conclusion of the accused’s direct testimony.
The Perry court based its holdings on the premise that a defendant has no constitutional right to discuss his testimony with counsel while the testimony is in progress and because there is a “virtual certainty” that any conversation between defendant and counsel during a brief recess would relate to the ongoing testimony. Perty, supra. In order to maintain the integrity of the trial, the judge was permitted to take steps to insure uninfluenced testimony. Just as in Perry, the trial judge in the instant matter was attempting to prevent unethical coaching by barring discussions concerning defendant’s testimony as well as maintaining the integrity of the entire process. The distinguishing facts of the instant matter are that the order in Perry was for the duration of a 15-minute recess while the order in the case at bar related to an overnight recess. Admittedly, Perry does not address the issue of whether an order banning only communications regarding defendant’s testimony during an overnight recess is permissible under the Sixth Amendment.
However, the essence of Perry is the prevention of consultation regarding the defendant’s testimony while he is a witness. The instruction given to Mr. Glashauser did no more than what was deemed permissible in Perry; it prevented the defendant’s testimony from being improperly influenced.' There can be no “unjust deprivation” of the right to counsel where the defendant was deprived of a consultation to which he had no entitlement. “Once the defendant places himself at the very heart of the trial process, it only comports with basic fairness that the story presented on direct is measured for its accuracy and completeness by uninfluenced testi *333 mony on cross-examination/'’ Perry, supra, quoting United States v. DiLapi 551 F.2d 140, 151 (2d Cir. 1981) (Mishler, J., concurring), cert. denied, 455 U.S. 938, 102 S.Ct. 1427, 71 L.Ed. 2d 648 (1982). The instruction at issue was intended to accomplish the identical result as was the order given in Perry. Therefore, if the bar on communication in Perry did not violate the right to counsel, the instruction given to Mr. Glashauser should likewise be within the discretion of the trial judge. We find the sound reasoning of Perry to be compelling:
“Nevertheless, when the defendant assumes the role of a witness, the rules that generally apply to other witnesses — rules that serve the truth-seeking function of the trial — are generally applicable to him as well. Accordingly, it is entirely appropriate for a trial judge to decide, after listening to the direct examination of any witness, whether the defendant or a non-defendant, that cross-examination is more likely to elicit truthful responses if it goes forward without allowing the witness an opportunity to consult with third parties, including his or her lawyer.
“In other words, the truth-seeking function of the trial can be impeded in ways other than unethical 'coaching/ Cross-examination often depends for its effectiveness on the ability of counsel to punch holes in a witness’ testimony at just the right time, in just the right way. Permitting a witness, including a criminal defendant, to consult with counsel after direct examination but before cross-examination, grants the witness an opportunity to regroup and regain a poise and sense of strategy that the unaided witness would not possess. This is true even if we assume no deceit on the part of the witness; it is simply an empirical predicate of our system of adversary rather than inquisitorial justice that cross-examination of a witness who is uncounseled be *334 tween direct examination and cross-examination is more likely to lead to the discovery of truth than is cross-examination of a witness who is given time to pause and consult with his attorney.” Perry, supra.
The courts of this Commonwealth have not addressed the issue of right to counsel since Perry v. Leeke was handed down. We acknowledge that there exists a substantial body of case law that would support the grant of a new trial for Mr. Glashauser. (See citations to footnote 2.) However, in light of the Supreme Court’s ruling in Perry v. Leeke, we believe the issue deserves reflection and reconsideration. The right to the assistance of counsel has been redefined by Perry. The right to counsel as guaranteed by the Sixth Amendment is no longer viewed as absolute, but rather must be considered in light of the role of the trial judge in maintaining the overall integrity of the trial. We do not advocate the position that a trial judge should be allowed to completely sever communications between counsel and defendant, but rather that a judge should have the discretion to prevent counsel from perhaps improperly influencing the testimony of an accused while the accused is in the midst of testifying.
While Pennsylvania has consistently applied a per se rule in reviewing claims of denial of assistance of counsel, the Third Circuit has unquestionably shifted from the per se rule as applied in United States v. Venuto, 182 F.2d 519 (3d Cir. 1950), to the view that no deprivation occurs in the absence of an objection. See Bailey v. Redman, 657 F.2d 21 (3d Cir. 1981), cert. den. 454 U.S. 1153, 102 S.Ct. 1024, 71 L.Ed. 2d 310, reh. den. 455 U.S. 995, 102 S.Ct. 1624, 71 L.Ed. 2d. 857. In Bailey, the defendant was instructed not to discuss his testimony with anyone during an overnight recess. The defendant had been in the process of cross-examination when the court *335 recessed for the day. The judge’s instruction was neither questioned nor objected to by defense counsel. In fact, the issue of denial of counsel was not raised until Bailey sought post-conviction relief.
The Third Circuit held that although the trial court’s instruction may have been improper, without a showing that the defendant had wanted to meet with counsel but was prevented from doing so by the trial court’s order, there could be no violation of the defendant’s Sixth Amendment rights. Bailey, supra. In reaching its decision, the court addressed both Geders and Venuto finding its holding not inconsistent with those decisions since the record in those matters indicated that absent the court’s instruction, the defendant would have met with counsel. Bailey, supra. The court was careful to delineate that a defendant need not prove the prejudice caused by the instruction; it is sufficient to show simply that a desire to consult existed and was interfered with by the judge’s order. Bailey, supra.
“We do not require a defendant to demonstrate the ‘prejudice’ to his case because we do not want to infringe on the confidentiality of attorney-client communications. However, a defendant need not disclose confidential information in order to prove that he has been ‘deprived’ of an opportunity to meet with counsel. To show a ‘deprivation’ of his Sixth Amendment rights, a defendant must merely demonstrate that he wanted to meet with counsel, but was prevented from doing so by the court’s instruction.” Bailey, supra at 24.
In one instance, the Pennsylvania Supreme Court arrived at a similar result by finding a waiver of the right to raise the issue of deprivation of counsel where no timely objection was made. See Commonwealth v. Scoleri, 432 Pa. 571, 248 A.2d 295 (1968), vacated on other grounds 408 U.S. 934, 92 S.Ct. *336 285, 233 L.Ed. 2d 747, reh. den. 409 U.S. 897, 93 S.Ct. 87, 34 L.Ed. 2d 155. In Scoleri the accused was ordered not to confer with his attorney over a noon recess. Counsel’s failure to object to the instruction served to bar him from raising the issue on appeal even though he had informed the court after the recess that he had been unable to confer with the defendant during the recess. The Supreme Court refused to allow Scoleri to raise the issue, reasoning as follows:
“While we have in some few instances permitted an exception to this rule and have entertained questions raised for the first time upon an appeal, such cases have always involved errors of such substance and prejudice as to result in an unfair trial and a deprivation of justice.” Commonwealth v. Scoleri, supra.
Thus, the Pennsylvania Supreme Court did not find the complete bar on attorney-defendant communication over the lunch hour to be reversible error in the absence of an objection.
Essentially Scoleri and Redman support the view that there can be no violation of the right to counsel where the record fails to demonstrate an actual deprivation. In the case sub judice, defense counsel placed no objection on the record at the time the instruction was given. There is no indication that counsel had desired to speak with his client during the overnight recess. Given the fact that Mr. Glashauser was incarcerated at the time of trial, his attorney would have had to have gone to the prison in order to speak with the defendant. The records reflect no attempts by defense counsel to speak with Mr. Glashauser at the prison during the night. Even by way of the post-verdict motion counsel fails to *337 claim that he had intended to talk to his client but was prevented from doing so.
Defense counsel takes the position that prejudice is to be assumed solely from the fact that the instruction was given. It is obvious that such an absolute position is not in keeping with current legal thought as set forth in Perry and Bailey. As we previously discussed, the Perry court permitted an actual deprivation of the right to counsel during a brief recess for the purpose of preventing coaching. Therefore, it cannot be said that the right to counsel is absolute. Courts may intervene for the purpose of preserving the truth-seeking function of a trial. Perry v. Leeke, supra. We note that in Perry, the deprivation was actual since the instruction was objected to and the record indicated that counsel would have spoken with the defendant but for the judge’s order.
We are not seeking the appellate courts of this Commonwealth to go beyond the decision of the court in Perry. A leap of that degree is not required in order to uphold Mr. Glashauser’s conviction. Instead we seek an application of the sound decision as pronounced in Scoleri, and as amplified by the Third Circuit in Bailey, be made. Where a trial court instructs a defendant not to discuss his testimony with anyone during an overnight recess, and such instruction is not objected to, nor is there any indication that counsel wanted to speak to the defendant, there can be no impermissible infringement on the right to counsel.
In summary, Mr. Glashauser was not deprived of a right that he sought to exercise. Therefore, no prejudice can be said to have resulted from the judge’s instruction such as would require the granting of a new trial.
*338 We will therefore enter the following
ORDER
And now, November 30, 1990, after a thorough review of the record in this matter and upon extensive consideration of the issues raised by the post-verdict motions, it is hereby ordered, directed and decreed as follows:
The post-verdict motions of defendant are denied.

. Trial counsel left the Public Defender’s Office after filing the post-trial motions. Subsequently another public defender took over the case and submitted a brief in support of the post-trial motions. In order to familiarize counsel with the matter and at the request of defense counsel, the trial transcript was typed. The transcript was completed August 16, 1990. Defendant’s brief was received September 24 and the Commonwealth’s brief was received October 9.

. The holding of Geders is in keeping with the certain law of this Commonwealth that any denial of counsel is per se reversible error. Commonwealth v. Logan, 456 Pa. 508, 325 A.2d 313 (1974); Commonwealth v. Werner, 206 Pa. Super. 498, 214 A.2d 276 (1965); Commonwealth v. Peetros, 206 Pa. Super. 503, 214 A.2d 279 (1965); Commonwealth v. Vivian, 426 Pa. 192, 231 A.2d 301 (1967); Commonwealth v. Barber, 250 Pa. Super. 427, 378 A.2d 1011 (1977).