SWEET DREAMS UNLIMITED, INC., an Illinois Corporation, Plaintiff–Appellee,

v.

DIAL–A–MATTRESS INTERNATIONAL, LTD., a Delaware Corporation, Dial–A–Mattress Operating Corporation, a New York Corporation, Napoleon Barragan, Luis Barragan and Joseph Vicens, Defendants–Appellants.

No. 92–3506.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 22, 1993.

Decided Aug. 6, 1993.

Gerald A. Goldman, Arthur R. Ehrlich (argued), Ira Marcus, Goldman & Marcus, Chicago, IL, for plaintiff-appellee.

Jonathan G. Bunge, Angela Marsh, Mary B. Snyder, Keck, Mahin & Cate, Chicago, IL, Jeffrey J. Keyes (argued), James J. Long, Briggs & Morgan, Saint Paul, MN, for defendants-appellants.

Before CUMMINGS, CUDAHY and ROVNER, Circuit Judges.

CUDAHY, Circuit Judge.

Dial–A–Mattress International, Ltd. and Sweet Dreams Unlimited, Inc. were joint venturers engaged in the business of telemarketing bedding products and accessories. The parties memorialized their relationship in an agreement signed March 8, 1991 (the Agreement). The Agreement provided that Sweet Dreams, in exchange for the right to use certain of Dial–A–Mattress' trademarks, trade names and telephone numbers in the Chicago metropolitan area, would devise and implement a marketing campaign and operate a product delivery system for the parties' mutual benefit. They were to divide the revenues generated by the venture, ninety percent to Sweet Dreams and ten percent to Dial–A–Mattress. The Agreement expired in four months, according to its own terms, but Sweet Dreams was given an option to purchase a Dial–A–Mattress franchise.

Sweet Dreams continued to market products under the Dial–A–Mattress trademark even after the Agreement expired. Dial–A–Mattress apparently did not object to this, and, to induce Sweet Dreams to continue its marketing efforts, offered to expand Sweet Dreams' territory to include, first, the City of Los Angeles and, later, the entire continental United States (except for the State of New York). Sweet Dreams promptly accepted in both instances. Following substantial urging by Sweet Dreams, Dial–A–Mattress prepared a franchise agreement. This agreement was never executed and Dial–A–Mattress has, according to Sweet Dreams, "unreasonably and vexatiously refused to perform" according to it. Complaint, count II, ¶ 23. Dial–A–Mattress severed entirely the parties business relationship in 1992. Moreover, Sweet Dreams charges, Dial–A–Mattress interfered with Sweet Dreams' arrangements with its suppliers in an attempt to force Sweet Dreams out of business and to usurp the successful marketing and distribution network that it had established.

Sweet Dreams filed a four-count complaint against Dial–A–Mattress in Illinois state court. Count I alleges that the Agreement violated Illinois law and that Sweet Dreams is, as a result, entitled to rescind it. In Count II, Sweet Dreams asserts that Dial–A–Mattress fraudulently induced it to continue making expenditures in developing the Chicago market after the Agreement had expired. Count III alleges the same with regard to the Los Angeles and national markets. Finally, Count IV alleges that Dial–A–Mattress intentionally interfered with certain of Sweet Dreams' business relationships. Dial–A–Mattress removed the case to the district court, jurisdiction being properly predicated upon a diversity of citizenship, and promptly moved the court to dismiss or stay the litigation pending arbitration of the parties' disputes.

Dial–A–Mattress argued that the Agreement relegated all of Sweet Dreams' charges to arbitration and that, as a result, the litigation must be stayed pending completion of the arbitration proceedings.[1] The district court, in a careful opinion, concluded that the arbitration provision at issue did not encompass the parties' disputes and, consistent with this conclusion, denied Dial–A–Mattress' motion. *Sweet Dreams Unlimited, Inc. v. Dial–A–Mattress International, Ltd.,* 803 F.Supp. 1358 (N.D.Ill.1992). Dial–A–Mattress appeals from this decision.[2] In resolving this puzzling matter, the district court placed great emphasis on certain decisions of other circuits, which denied arbitration based on assertedly relevant differences in wording of the respective arbitration clauses. Although these cases are instructive, we believe that they are subtly, but nonetheless materially, distinguishable from the present one. We also note that one of these opinions has been so limited by the court that issued it that it appears no longer to support the proposition for which the district court cited it. As a result, we are left to rely upon the

---

1. The Federal Arbitration Act authorizes a district court to enforce written arbitration provisions and to stay litigation pending arbitration. 9 U.S.C. §§ 2–4.

2. Jurisdiction is conferred on this court by 9 U.S.C. § 16(a)(1)(A) (authorizing interlocutory appeals from orders refusing to stay litigation pending arbitration).

clear thrust of our own arbitration cases and, of course, upon binding instruction from the Supreme Court. Because we find that these authorities compel arbitration of the parties' disputes, we reverse.

It is beyond peradventure that the Federal Arbitration Act embodies a strong federal policy in favor of arbitration. *See, e.g., Moses H. Cone Mem. Hosp. v. Mercury Constr.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). But the duty to arbitrate remains one assumed by contract, and we will not compel parties to arbitrate disputes unless they have agreed to do so. *National R.R. Passenger Corp. v. Chesapeake & Ohio Ry. Co.*, 551 F.2d 136, 140 (7th Cir.1977). Our analysis thus begins with the language of the Agreement's arbitration provision itself: "Any disputes arising out of the agreement shall be settled and determined by the American Arbitration Association of the City of New York and their finding shall be binding and conclusive upon the parties hereto and judgment may be entered thereon in any court of record." Agreement ¶ 4.

In deciding whether any or all of the counts of Sweet Dreams' complaint are subject to arbitration, we must bear in mind that, "[a]n order to arbitrate [a] particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.* (quoting *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960)). Turning to Count I of the complaint, we observe that Sweet Dreams has requested rescission of the Agreement pursuant to the Illinois Franchise Disclosure Act, 815 ILCS 705/1–705/42 (1993).[3] This act prohibits offering for sale any franchise that has not been properly

registered, 815 ILCS 705/5(1) (1993), and authorizes a franchisee that has purchased an unregistered franchise (which Sweet Dreams claims to be) to sue for rescission. 815 ILCS 705/26 (1993). A successful rescission action annuls the contract and returns the parties to the status quo ante. Howard O. Hunter, Modern Law of Contracts ¶ 3.02[4] (1986). We are thus confronted with an interesting, if not somewhat metaphysical, question: Does a dispute, which has as its object the nullification of a contract, "arise out of" that same contract?

The Supreme Court has, we believe, answered this question in the affirmative, at least insofar as arbitration is concerned. In *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04, 87 S.Ct. 1801, 1805–06, 18 L.Ed.2d 1270 (1967), the Court held, over a vigorous three-Justice dissent, that a federal court may adjudicate issues going to the " 'making' of the agreement to arbitrate" (in that case allegations of fraudulent inducement) but that the Federal Arbitration Act "does not permit [a] federal court to consider claims of fraud in the inducement of the contract generally." [4] The *Prima Paint* rule applies though only if the dispute falls within the scope of the particular arbitration clause in question. The Supreme Court had no trouble with this threshold issue, stating that the parties "contractual language is easily broad enough to encompass Prima Paint's claim that both execution and acceleration of the ... agreement were procured by fraud." *Id.* at 406, 87 S.Ct. at 1807. Seizing upon a difference in language in the Agreement's arbitration provision and that involved in *Prima Paint*, the district court distinguished what it admitted would otherwise be binding authority compelling arbitration. We find the district court's rea-

---

**3.** Sweet Dreams suggests that ordering arbitration of Count I would "usurp Illinois' right to interpret its own Franchise laws." Appellee's Br. at 14–15. We reject this argument for two reasons. First, it is nonsense. The arbitrator will be bound by the Illinois Franchise Disclosure Act and any court decisions interpreting it. And it should go without saying that no Illinois court will be bound by the arbitrator's interpretation of the statute. Second, the Supreme Court has held that the Federal Arbitration Act super-

sedes any state provision that might attempt to insulate certain causes of action from arbitration. *Southland Corp. v. Keating*, 465 U.S. 1, 10–16, 104 S.Ct. 852, 858–61, 79 L.Ed.2d 1 (1984).

**4.** In other words, a court may consider a claim that a contracting party was fraudulently induced to include an arbitration provision in the agreement but not claims that the entire contract was the product of fraud.

soning to be challenging, but do not believe that in the end it can stand.

The arbitration clause in *Prima Paint* provided that "[a]ny controversy or claim *arising out of or relating to* this Agreement, or the breach thereof, shall be settled by arbitration. . . ." 388 U.S. at 398, 87 S.Ct. at 1803 (emphasis supplied). The district court reasoned that, because the phrase "relating to" appears in *Prima Paint* but not in the Agreement, the arbitration provision in the Agreement is narrower than that at issue in *Prima Paint*. The Agreement's clause is so much narrower, the district court found, that "it would be anomalous to hold that a challenge to the very existence" of the Agreement is arbitrable pursuant to it. 803 F.Supp. at 1361. In reaching this conclusion, the district court relied principally upon *Mediterranean Ent., Inc. v. Ssagyong*, 708 F.2d 1458, 1464 (9th Cir.1983), which in turn relied upon *In re Kinoshita & Co.*, 287 F.2d 951 (2d Cir.1961), both of which denied arbitration. The district court commented that the arbitration provisions in these cases were "essentially on all fours" with that in the Agreement. 803 F.Supp. at 1360. But we find the clauses to be different in one key respect.

■ The arbitration provision in *Mediterranean Ent.* stated: "Any disputes arising *hereunder* . . . shall be settled through binding arbitration. . . ." 708 F.2d at 1461 (emphasis supplied). The analogous clause in *Kinoshita* required arbitration of "any dispute or difference [that] should arise *under* [the agreement]." 287 F.2d at 952.[5] Both courts accepted the argument that such clauses encompass only those disputes that relate to the interpretation and performance of the contract itself. 708 F.2d at 1464; 287 F.2d at 953. Here, of course, the arbitration provision reaches all disputes "arising *out of*" the Agreement. The district court did not comment on this difference, but we believe that it may be important. There is no need to disagree with the Second and Ninth Circuits that "arising under" may denote a dispute somehow limited to the interpreta-

tion and performance of the contract itself. We find, however, that "arising *out of*" reaches all disputes having their origin or genesis in the contract, whether or not they implicate interpretation or performance of the contract per se. We are not persuaded by Judge Medina's dicta in *Kinoshita* that suggests an equation between "arising under" and "arising out of." 287 F.2d at 953 ("The agreement to arbitrate is limited to [matters involving contract interpretation or performance] when it refers to controversies 'under' or 'arising out of' the contract. . . .") (emphasis supplied). We have indicated how our own analysis rejects such an equation. In addition, the authority of *Kinoshita* has been narrowed "to its precise facts." *S.A. Mineracao da Trindade–Samitri v. Utah Int'l, Inc.*, 745 F.2d 190, 194 (2d Cir.1984). As a matter of "precise fact," *Kinoshita* deals with the effect of "arising under" language.

■ Bearing in mind the Supreme Court's instruction that "any doubt concerning the scope of arbitrable issues should be resolved in favor of arbitration," *Moses H. Cone Mem. Hosp. v. Mercury Construction Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1985), we conclude that Count I is subject to arbitration. The cases cited by the district court to the contrary are either, as we have suggested, distinguishable or are of less than compelling authority. Unlike the district court, we do not believe that adding "relating to" to "arising out of" substantially broadens the scope of the clause as applied to the present complaint.

Although Count I seeks to cancel the Agreement, it is nonetheless a result of the Agreement and has its origins in it. In that sense it "arises out of" the Agreement and is subject to arbitration. In fact, any dispute between contracting parties that is in any way connected with their contract could be said to "arise out of" their agreement and thus be subject to arbitration under a provision employing this language. At the very least, an "arising out of" arbitration clause would "arguably cover[ ]" such disputes, and, under our cases, this is all that is needed to

---

**5.** The Ninth Circuit interpreted "arising hereunder" as synonymous with "arising under the agreement." 708 F.2d at 1464. Thus, the arbi-

tration provisions in *Mediterranean Ent.* and *Kinoshita* are, for our purposes, identical.

trigger arbitration. *See Schacht v. Beacon Ins. Co.*, 742 F.2d 386, 391 (7th Cir.1984).

We note that contracting parties control their own fate when it comes to deciding which disputes to consign to arbitration. On the one hand, they may delineate precisely those claims that are subject to arbitration or, on the other, they may employ general—even vague—language in their arbitration provisions. They may also combine these techniques by using general language to authorize arbitration together with specific language to identify the types of disputes that are *not* subject to arbitration, thereby limiting the reach of phrases such as "arising out of," "arising under" or "arising out of or relating to." *See S.A. Mineracao Da Trindade–Samitri*, 745 F.2d at 194. The parties here, however, have not taken any steps to narrow the reach of the Agreement's arbitration clause, and, in the light of the heavy presumption in favor of arbitration, we are left to conclude that Count I is arbitrable.

■ Counts II, III and IV, for the most part, relate to events occurring after the Agreement expired. Although somewhat difficult to decipher, Counts II and III seem to allege some species of the torts of fraud or misrepresentation.[6] *See* Fowler V. Harper, Fleming James, Jr., & Oscar S. Gray, The Law of Torts §§ 7.1–7.15 (2d ed. 1986). Count IV more clearly alleges the tort of intentional interference with contractual advantage. *See id.* at §§ 6.5–6.9. Sweet Dreams contends that these counts are not arbitrable under the Agreement's arbitration clause because they sound in tort. We have routinely held that a party may not avoid a contractual arbitration clause merely by "casting its complaint in tort." *See, e.g., In re Oil Spill by the "Amoco Cadiz" etc.*, 659 F.2d 789, 794 (7th Cir.1981) (quoting *Altshul Stern & Co. v. Mitsui Bussan Kaisha, Ltd.*, 385 F.2d 158, 159 (2d Cir.1967)). The touchstone of arbitrability in these circumstances is "the relationship of the claim to the subject matter of the arbitration clause." *Id.*

Counts II, III and IV do not raise issues of contract interpretation or performance. Nor are they connected to the contract in the sense that they challenge the validity of the contract. But they clearly have their genesis in the Agreement. Counts II and III allege that Dial–A–Mattress fraudulently induced Sweet Dreams to continue marketing efforts that were started pursuant to the Agreement. Complaint, Count II, ¶¶ 10–13 & Count III, ¶¶ 23–26. Similarly, Count IV alleges that Dial–A–Mattress interfered with business relations that developed "[f]rom March 8, 1991," the date of the Agreement. Complaint, Count IV, ¶ 10. Keeping in mind the federal presumption in favor of arbitration, we conclude that these counts are related to the subject matter of the arbitration clause and subject to arbitration under it.

■ Sweet Dreams raises one last point that need not detain us long. It argues that the arbitration provision is inapposite because the Agreement has expired. The Supreme Court, however, has stated that "the failure to exclude from arbitrability contract disputes arising after termination, far from manifesting an intent to have arbitration obligations cease with the agreement, affords a basis for concluding that they intended to arbitrate all grievances arising out of the contractual relationship." *Nolde Bros., Inc. v. Local No. 358, Bakery & Confectionery Workers Union*, 430 U.S. 243, 255, 97 S.Ct. 1067, 1074, 51 L.Ed.2d 300 (1977). Although *Nolde Bros.* involved a collectively bargained labor agreement and thus is arguably not dispositive here, we find its reasoning persuasive in this context as well. If the parties had wished to limit the duty to arbitrate to the term of the Agreement itself they could have said so explicitly. Instead, they used language that evinces an intent to commit to arbitration any dispute connected with the contract irrespective of when it occurs. We would be presented with a different and more difficult question if the disputes had arisen a significant time after the expiration of the Agreement. *See, e.g., Local 703, Int'l Bhd. of Teamsters v. Kennicott*, 771 F.2d 300 (7th Cir.1985) (holding that dispute arising six months after expiration of collective bar-

---

**6.** Count III also could be construed to allege that the Agreement was fraudulently induced. Complaint, Count III, ¶ 23. To this extent, it is sub-ject to arbitration for the same reasons as Count I.

gaining agreement was not arbitrable). But following as they did on the heels of the Agreement, we readily find that they are subject to arbitration.

For the foregoing reasons, the judgment of the district court is REVERSED and the case REMANDED with instructions to enter an order staying litigation pending resolution of the arbitration proceedings.