**AIR FREIGHT SERVICES, INC., and Jeffrey Schiff, Plaintiffs,**

v.

**AIR CARGO TRANSPORT, INC., Pau Pau, Inc., Harold Hamby, William Moultrie, and Airgroup Corporation, Defendants.**

No. 95 C 5850.

United States District Court, N.D. Illinois, Eastern Division.

March 26, 1996.

Marc J. Blumenthal, Buffalo Grove, IL, for Plaintiffs.

Kenneth S. Goodsmith, Joseph A. Sullivan, Latham & Watkins, Chicago, IL, E. Bryan Dunigan, III, Roddy, Power, Leahy, Chicago, IL, Gregory F. Herkert, Barry & Assoc., P.C., St. Louis, MO, Douglas Bacon, Latham & Watkins, Chicago, IL, for Defendants.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Before the court are defendants Airgroup Corporation's ("Airgroup"), William Moultrie's ("Moultrie"), Air Cargo Transport, Inc.'s ("Air Cargo"), Pau Pau, Inc.'s ("Pau Pau"), and Harold Hamby's ("Hamby") (collectively, "defendants") motion for a stay of the proceedings in the case brought by Air Freight Services, Inc. ("Air Freight") and Jeffrey Schiff ("Schiff") (collectively, "plaintiffs") pending arbitration, and motion for enlargement of time to respond to plaintiffs' complaint. For the reasons that follow, the court grants defendants' motions.

## I. BACKGROUND

Air Freight, an Illinois corporation with its principal place of business in Illinois, provides transportation services in the Chicago area. Schiff, also an Illinois resident, is Air Freight's secretary, treasurer, and shareholder. Airgroup, a Washington corporation with its principal place of business in Washington, provides freight customers with accounting and communication services, under the trade name "Airgroup Express," through local independent agents. Moultrie, Airgroup's president, is a Washington resident. Air Cargo and Pau Pau, both Missouri corporations with their principal places of business in Washington, are agents of Airgroup Express. Hamby, their president, is a Missouri resident. This case is before the court on the basis of diversity of citizenship. *See* 28 U.S.C. § 1332.

In March 1992, Air Freight and Airgroup entered into a Transportation Services Agreement ("1992 Agreement"), pursuant to which Air Freight became the exclusive agent for Airgroup Express in the region of Illinois north of U.S. Highway 36. Under the 1992 Agreement, Air Freight provided solicitation, tracking, billing, and cartage services to Chicago-area Airgroup Express customers. Air Cargo operated in the St. Louis area under an agreement containing terms identical to the 1992 Agreement.

On May 15, 16, and 17, 1995, Schiff met with Moultrie, Hamby, and James Boyle, general manager of Pau Pau. By the close of the meeting, Schiff and defendants agreed on a relationship between Air Freight, Air Cargo and Airgroup.

On May 17, 1995, Schiff wrote Moultrie a letter, also signed by Hamby and apparently memorializing the agreement reached at the meeting. In sum, the letter stated that Hamby would open a sales operation office for Airgroup Express in the Chicago area, and Schiff would maintain the cartage operation for Airgroup Express in the Chicago area. The letter stated that Schiff would maintain existing accounts and receive revenue from the accounts, and would receive commissions on future accounts sold by Schiff. The letter stated that Hamby would take over the existing phone numbers for the Chicago Airgroup Express agency, and would employ personnel to handle domestic and international operations. The letter stated, finally, that Schiff would move into an unidentified Airgroup Express location, presumably wherever Hamby set up the location.

On May 23, 1995, Moultrie responded to Schiff's May 17, 1995, letter with a letter in which Moultrie agreed that the 1992 Agreement would be terminated as of June 1, 1995, unless Schiff advised him otherwise. Moultrie advised Schiff that, effective June 1, 1995, Schiff could not represent himself in any manner as Airgroup Express.

On May 27, 1995, Schiff responded to Moultrie's letter, stating that his understanding was that Hamby would operate a sales and operations facility, for which Schiff would be the exclusive cartage agent; and that the 1992 Agreement would be terminated, and a new agreement would be put into place reflecting the new company, which would retain all existing accounts.

Apparently, Moultrie adhered to his May 23, 1995, letter. As of June 1, 1995, Boyle and Hamby, acting as agents for their respective companies and Airgroup Express, did not contact Schiff and Air Freight to provide cartage services and did not provide information on customers to Schiff.

Shortly after the foregoing events occurred, plaintiffs filed suit against defendants in Cook County Circuit Court, alleging violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1—505/12 ("Count I"); breach of the May 17, 1995, letter agreement ("Count II"); unlawful termination of the 1992 Agreement ("Count III"); conspiracy to commit fraud ("Count IIIA"); [1] breach of the 1992 Agreement ("Count V"); and interference with prospective economic advantage ("Count

---

1. In their Verified Complaint, plaintiffs mistakenly label both the unlawful termination of the 1992 Agreement allegation and the conspiracy to commit fraud allegation as Count III. For simplicity and clarity, the court will refer to the unlawful termination allegation as Count III, and the conspiracy allegation as Count IIIA.

VI"); and requesting an accounting under the May 17, 1995, letter agreement ("Count IV"). Defendants removed the case to this court on the basis of diversity of citizenship, and now move to stay the proceedings for reasons explained in section II, below.

## II. *DISCUSSION*

Defendants base their motion for a stay of proceedings pending arbitration on a provision in the 1992 Agreement providing for mandatory and binding arbitration of any dispute regarding Air Freight's and Airgroup's respective rights and obligations under the 1992 Agreement. (*See* Complt.Ex. 1 ¶ 14.1.) Defendants contend that this provision requires the court to stay the proceedings in this court until Airgroup and Air Freight complete the mandatory arbitration process.

■ The Federal Arbitration Act, which applies to a lawsuit brought in federal court, provides:

> If any suit or proceeding be brought in any of the courts of the United States upon *any issue* referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, *shall* on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (emphasis added). "Congress's enactment of the Federal Arbitration Act created national substantive law controlling all issues concerning the validity and enforceability of covered arbitration agreements and reflected a strong federal policy favoring arbitration as a means of dispute resolution." *Morrie & Shirlee Mages Foundation v. Thrifty Corp.*, 916 F.2d 402, 405 (7th Cir. 1990) (citing *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218–21, 105 S.Ct. 1238, 1241–43, 84 L.Ed.2d 158 (1985); *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22–23, 103 S.Ct. 927, 940–41, 74 L.Ed.2d 765 (1983); *McCowan v.*

*Sears, Roebuck and Co.*, 908 F.2d 1099, 1106 (2d Cir.1990), *cert. denied*, 498 U.S. 897, 111 S.Ct. 250, 112 L.Ed.2d 209 (1990)).

■ A district court has no discretion to refuse a request for a stay when the requirements of section 3 are met. *Mages*, 916 F.2d at 405–06 (citing 9 U.S.C. §§ 3, 4). Rather, the court must direct the parties to proceed to arbitration on all issues covered by an arbitration agreement " 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.' " *Mages*, 916 F.2d at 405–06 (citing 9 U.S.C. §§ 3, 4 and quoting *United Steelworkers of America v. Warrior and Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960)).

■ In *Mages*, the Seventh Circuit adopted what it called a "common-sense reading" of section 3 of the Federal Arbitration Act: "[I]f the federal action concerns an 'issue referable to arbitration' under the terms of the arbitration agreement, the district court must stay the trial until the arbitration has 'concluded.' " *Mages*, 916 F.2d at 406. The court based its reasoning on the potential of adverse effects the litigation could have on the pending arbitration, if the litigation were allowed to proceed; for example, the potential for impairment of the issues before the arbitrator because of the collateral estoppel effect of the litigation. *Mages*, 916 F.2d at 406–07.

■ Thus, a court should stay litigation pending arbitration even when the arbitration would not necessarily resolve all of the issues raised by the parties in the litigation. *See C. Itoh & Co. (America) Inc. v. The Jordan International Co.*, 552 F.2d 1228, 1230–32 (7th Cir.1977) (reversing district court that denied a stay pending arbitration because some issues involved in the case were not referable to arbitration). Furthermore, a plaintiff cannot avoid an arbitration agreement simply by adding as a defendant a person not a party to the arbitration agreement; that person still can obtain a stay of litigation pending arbitration. *See Itoh*, 552 F.2d at 1231; *Mages*, 916 F.2d at 406–08; *Kroll v. Doctor's Associates, Inc.*, 3 F.3d

1167, 1171–72 (7th Cir.1993). Nor can a plaintiff avoid an arbitration agreement " 'merely by "casting its complaint in tort." ' " *Kroll,* 3 F.3d at 1170 (quoting *Sweet Dreams Unlimited, Inc. v. Dial–A–Mattress International, Ltd.,* 1 F.3d 639, 643 (7th Cir.1993) (quoting *In re Oil Spill by the "Amoco Cadiz" etc.,* 659 F.2d 789, 794 (7th Cir.1981))). "The touchstone of arbitrability in such situations is the relationship of the tort alleged to the subject matter of the arbitration clause." *Kroll,* 3 F.3d at 1170 (citing *Sweet Dreams,* 1 F.3d at 643).

■ In accord with the foregoing, the court finds that it should stay litigation in this case until Air Freight and Airgroup have had an opportunity to arbitrate the issues covered by the 1992 Agreement arbitration provision. Plaintiffs bring seven counts against defendants. Counts III and V directly implicate the 1992 Agreement, and therefore are subject to the arbitration provision in the 1992 Agreement. The fact that some of the issues involved in the case are arbitrable is enough to require the entire case to be stayed pending arbitration of the arbitrable issues. *See* 9 U.S.C. § 3; *Itoh,* 552 F.2d at 1230–32; *Mages,* 916 F.2d at 406–08; *Kroll,* 3 F.3d at 1171–71.

■ The court finds further, though, that the entire dispute now before it hinges upon interpretation of the 1992 Agreement. Some of the questions raised by plaintiffs' complaint are these: was the 1992 Agreement terminated; if so, by whom; was it terminated wrongfully; and what was the effect of the May 15–17, 1995, meeting and May 17, 1995, letter on the 1992 Agreement? The answers to these questions likely turn on the intentions of the parties—whether expressed or unexpressed, legitimate or fraudulent— when they met in May 1995.

The court finds that some or all of these questions are raised by each count of plaintiffs' complaint, and that issues involving the 1992 Agreement pervade all of the counts of plaintiffs' complaint. Consequently, if the court were to attempt to address any of plaintiffs' claims, even those not directly involving the 1992 Agreement, the court would have to deal with issues involving the 1992 Agreement and would risk interfering with

the arbitrator's duties. Such a trespass into the arbitrator's province would violate the letter and spirit of the Federal Arbitration Act. Therefore, the court finds that it would be wise to allow the arbitrable issues in this case to be decided before the case proceeds any further, so as not to impair the arbitrator's ability to decide the arbitrable issues.

However, plaintiffs urge this court to do the opposite—to follow *Dickinson v. Heinold Securities, Inc.,* 661 F.2d 638 (7th Cir.1981), and stay defendants' request to arbitrate arbitrable issues while resolving the non-arbitrable issues in court.

The plaintiff in *Dickinson* filed a complaint alleging one claim under federal securities law and several claims based on state tort and contract law. The plaintiff then sought to avoid arbitrating the state law claims, which were subject to an arbitration agreement, by arguing that the federal securities law claim was non-arbitrable, and that the whole case should be resolved by the district court. *Id.* at 641–43.

The Seventh Circuit rejected plaintiff's argument. The court stated that when non-arbitrable issues substantially permeate the entire case and make it difficult to separate out the arbitrable issues, the district court has discretion to stay the arbitration and decide the non-arbitrable issues. *Id.* at 644 (citing *Applied Digital Technology, Inc. v. Continental Casualty Co.,* 576 F.2d 116, 117 (7th Cir.1978)). The court stressed that the district court has the power to control the order of the two adjudications, and by doing so, can "preserve its full authority to decide the non-arbitrable federal issues without any collateral estoppel consequences from a prior arbitration." *Dickinson,* 661 F.2d at 644 (citing *Lawson Fabrics, Inc. v. Akzona,* 355 F.Supp. 1146, 1151 (S.D.N.Y.), *aff'd mem.,* 486 F.2d 1394 (2d Cir.1973)).

In the present case, all of plaintiffs' claims are state law claims, but several arguably are not arbitrable. As the *Dickinson* court instructed, this court has the power to control the order of the arbitration and litigation proceedings to avoid collateral estoppel problems. However, the court believes the more

appropriate order in this case would be arbitration first, then litigation.

Unlike in *Dickinson*, plaintiffs here have raised no federal issue over which this court has exclusive jurisdiction. Therefore, prior arbitration would not result in collateral estoppel that would threaten to interfere with this court's full authority to decide a federal question. Moreover, in contrast to *Dickinson* and as explained in more detail above, the court finds in the present case that the arbitrable issues permeate the entire case and make it difficult to separate out non-arbitrable issues, rather than the converse. Thus, *Dickinson* does not lend support to plaintiffs' argument that this court should decide all non-arbitrable issues before sending the arbitrable issues to arbitration, but instead buttresses defendants' contention that the court should stay the proceedings before it pending arbitration.

Accordingly, the court finds that plaintiffs' litigation against defendants in this court should be stayed until Air Freight and Airgroup have completed arbitration of any issues that are arbitrable pursuant to the 1992 Agreement.

### III. *CONCLUSION*

For the foregoing reasons, the court grants defendants' motion for a stay of the proceedings pending arbitration. The court grants defendants' motion for an extension of time to answer or otherwise plead to plaintiffs' complaint. Defendants are given 28 days from the date the arbitration concludes to file their answer or other pleading to plaintiffs' complaint.