[Cite as *Hoppel v. Feldman*, 2011-Ohio-1183.]

STATE OF OHIO, COLUMBIANA COUNTY
IN THE COURT OF APPEALS
SEVENTH DISTRICT

| | | |
|---|---|---|
| DOUGLAS E. HOPPEL | ) | CASE NO. 09 CO 34 |
| | ) | |
| PLAINTIFF-APPELLANT | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| A. RICHARD FELDMAN, et al. | ) | |
| | ) | |
| DEFENDANTS-APPELLEES | ) | |

CHARACTER OF PROCEEDINGS:     Civil Appeal from the Court of Common
Pleas of Columbiana County, Ohio
Case No. 2009-CV-538

JUDGMENT:     Affirmed.

APPEARANCES:
For Plaintiff-Appellant:     Atty. Carl Frankovitch
Atty. Kevin M. Pearl
Frankovitch, Anetakis Colantonio
  & Simon
337 Penco Road
Weirton, WV  26062

For Defendants-Appellees:     Atty. James F. Koehler
Atty. P. Wesley Lambert
1400 Fifth Third Center
600 Superior Avenue, East
Cleveland, Ohio  44114

Atty. Gregory V. Mersol
Atty. Chris Bator
Atty. Jeffrey Vlasek
Baker & Hostetler LLP
3200 National City Center
1900 East Ninth Street
Cleveland, Ohio  44114-3485

JUDGES:

Hon. Cheryl L. Waite
Hon. Gene Donofrio
Hon. Mary DeGenaro

Dated: March 9, 2011

WAITE, P.J.

{1} Appellant, Douglas E. Hoppel, appeals the judgment entry of the Columbiana County Court of Common Pleas granting a motion to stay the proceedings and compel arbitration filed by Appellees, A Richard Feldman, The Feldman Agency, Intersecurities, Inc. (collectively "the Feldman defendants"), and a motion to stay the proceedings filed by Appellee, New York Life Insurance and Annuity Corp. ("New York Life"). For the following reasons, the decision of the trial court is affirmed.

{2} According to the complaint, Appellant is the owner of a variable annuity with the Hartford Life and Annuity Insurance Company ("the Hartford"), brokered by the Feldman defendants. On or about September 29, 2008, when the annuity had an approximate value of $629,000.00, Feldman advised Appellant to transfer the funds from the variable annuity with the Hartford to a fixed annuity with New York Life.

{3} Based on Feldman's advice, Appellant executed all of the documents provided by Feldman to complete the transfer. Feldman informed Appellant that the transfer would be completed within 48 hours, and that the value of the variable annuity would be frozen as of October 2, 2008.

{4} The transfer was not completed within the 48-hour time frame. Appellant was subsequently notified by the Hartford that the value of his variable rate

annuity had decreased to $546,073.62 as of October 13, 2008. On that same date, Appellant informed Feldman that he no longer wished to proceed with the transfer due to the diminution in the value of the variable annuity.

{5} Feldman informed Appellant that the money had not been transferred to New York Life, but that Appellant had to contact the Harford to obtain reinstatement of his variable annuity contract. In the interim between the liquidation, then reinstatement, of Appellant's variable annuity, "the price of shares in the variable annuity account changed, and although [Appellant's] account was reinstated at $458,000.00, he received fewer shares." (Compl. ¶24.) The year-end value of the variable annuity at the Hartford was $417,794.60.

{6} In January of 2009, and again in April 2009, Appellant's counsel sent letters to the Feldman defendants requesting all documents related to the transfer of Appellant's variable annuity at the Harford to the fixed annuity at New York Life. When the Feldman defendants did not respond to either request, Appellant filed the complaint in the above-captioned case, alleging breach of contract, breach of fiduciary duty, and negligence claims against the Feldman defendants and New York Life. After filing two motions for leave to plead, the Feldman defendants filed a motion to stay and to compel arbitration, at issue in this appeal. New York Life filed a combined response to the motion as well as a motion to stay on its own behalf.

{7} In support of the motion to compel arbitration, the Feldman defendants filed the affidavit of Michael Scherrmao, the vice president and chief operating officer

of Intersecurities, Inc. Attached to the affidavit is a customer account information form ("CAI") signed by Appellant on July 18, 2005.

**{8}** There are two boxes in the top right hand corner of the CAI, captioned "New" and "Update." The "Update" box is marked. The last paragraph of the CAI reads, in pertinent part:

**{9}** "**CLIENT ACKNOWLEDGMENT: * * * THIS AGREEMENT CONTAINS A PREDISPUTE ARBITRATION CLAUSE WHICH APPEARS ON PAGE 2, PARAGRAPH 1, OF THIS AGREEMENT, WHICH BY SIGNING BELOW I AM ACKNOWLEDGING THAT ON THIS DAY I HAVE RECEIVED.**" (CAI, p. 1.)

**{10}** The arbitration clause states:

**{11}** "In consideration of opening one or more accounts for the undersigned, the undersigned agree(s) that any controversy between us arising out of or relating to my (our) account, transactions with or for me (us), or this agreement or the breach thereof shall be settled by arbitration in accordance with the rules, then established, of the National Association of Securities Dealers, Inc. * * *" (CAI, p. 2.)

**{12}** Appellant attached his own affidavit to his opposition brief. According to the affidavit, Appellant maintained more than one investment account with the Feldman defendants when the CAI was executed. (Hoppel Aff., ¶4.) Appellant opened his first accounts with the Feldman defendants, including the account that is the subject of the complaint, in 1999. (Hoppel Aff., ¶5.)

**{13}** In 2005, Appellant maintained a traditional Individual Retirement Account ("IRA") with Putnam Investments, with Lynette L. Pagley of American

General Securities, Inc., as the broker. (Hoppel Aff., ¶6.) In July of 2005, Appellant transferred the Putnam Investments account from Pagley at American General Securities, Inc., to Feldman at Intersecurities, Inc. (Hoppel Aff., ¶7.) Appellant attached the July 30, 2005 and September 30, 2005 year-to-date statements from the Putnam Investments IRA to demonstrate that the account representative was Pagley at the end of July, and Feldman at the end of September.

{14} Appellant asserts that the CAI was executed as a part of the 2005 IRA transfer. (Hoppel Aff., ¶7.) Line two of the CAI reads, "Account Type," and the "Traditional IRA" box is marked. Although the "Variable Account" box and "Other" box are not marked, the line following the "Other" box contains the handwritten inscription, "transfer rep on acct." (CAI, p. 1.)

{15} Appellant argues that the CAI was not executed for any other purpose than the transfer of the traditional IRA, "and has no connection whatsoever with [his] individual accounts which are the subject of the above-captioned lawsuit." (Hoppel Aff., ¶8.) The Feldman defendants counter that the CAI is broadly worded and refers to the Putnam IRA and all of Appellant's existing accounts at the time that the CAI was executed.

{16} The affidavits of Scherrmao and Appellant, the CAI, the Putnam investment statements, and the letters sent by Appellant's counsel to the Feldman defendants requesting Appellant's file were the only evidence before the trial court. The trial court did not conduct an oral hearing on the motions nor did it delay to allow Appellant to conduct any discovery. The judgment entry reads, in pertinent part:

**{17}** "The Court finds there is a contractual agreement between [Appellant] and [the Feldman defendants] which would require arbitration and therefore orders the same.

**{18}** "Whereas [Appellant] opposes any stay of litigation concerning his claims against New York Life, the Court finds that the allegations of the Complaint are such that a trial of the issues against New York Life would in all certainty require the involvement of [the Feldman defendants] with respect to whom the Court ordered the stay. Therefore, for reasons of fairness and judicial economy, the Court **stays this entire proceeding** pending the completion of the arbitration ordered above." (9/16/09 J.E., pp. 1-2.)

**{19}** This timely appeal followed.

<u>ASSIGNMENT OF ERROR NO. 1</u>

**{20}** "The trial court erred in finding that a contract to arbitrate the claims at issue existed between Douglas E. Hoppel and A. Richard Feldman, The Feldman Agency, LLC, and/or InterSecurities, Inc."

**{21}** " 'The Ohio Arbitration Act allows for either direct enforcement of [arbitration] agreements through an order to compel arbitration under R.C. 2711.03, or indirect enforcement through an order staying proceedings under R.C. 2711.02.' " *Maestle v. Best Buy Co.*, 100 Ohio St.3d 330, 2003-Ohio-6465, 800 N.E.2d 7, at ¶14, quoting *Brumm v. McDonald & Co. Securities, Inc.* (1992), 78 Ohio App.3d 96, 100, 603 N.E.2d 1141.

**{22}** R.C. 2711.02(B) provides that a court shall stay trial of an action on application of one of the parties if (1) the action is brought regarding any issue referable to arbitration under a written agreement for arbitration, and (2) the court is satisfied the issue is referable to arbitration under the written agreement.

**{23}** If a party moves to compel arbitration pursuant to R.C. 2711.03(A), "[t]he court shall hear the parties, and, upon being satisfied that the making of the agreement for arbitration or the failure to comply with the agreement is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the agreement."

**{24}** R.C. 2711.03(B) reads, in pertinent part, "[i]f the making of the arbitration agreement or the failure to perform it is in issue in a petition filed under division (A) of this section, the court shall proceed summarily to the trial of that issue. If no jury trial is demanded as provided in this division, the court shall hear and determine that issue."

**{25}** Appellant asserted his right to a bench trial, rather than a jury trial, in his response to the motion to compel. He claimed that, "[i]n this case there is a substantial question as to whether the purported arbitration agreement advanced by defendants in their motion is even applicable to the account at issue in this litigation. Given that fact, the plaintiff should be afforded an opportunity to engage in discovery on the issue of whether the dispute in this case is subject to arbitration, and if necessary, to have a trial of that issue before this Court." (Response Brf., p. 7.) Therefore, Appellant submitted the issue of arbitrability to the trial court for resolution.

{26} Ohio law provides that courts generally should indulge a strong presumption in favor of arbitration. *ACRS, Inc., v. Blue Cross & Blue Shield of Minnesota* (1998), 131 Ohio App.3d 450, 455, 722 N.E.2d 1040. However, an arbitration clause should not be expanded beyond its intent. *Stillings v. Franklin Twp. Bd. of Trustees* (1994), 97 Ohio App.3d 504, 508, 646 N.E.2d 1184.

{27} In C*ouncil of Smaller Enterprises v. Gates, McDonald & Co.* (1998), 80 Ohio St.3d 661, 687 N.E.2d 1352, the Ohio Supreme Court set forth guidelines in determining the arbitrability of a given dispute: (1) arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit; (2) the question whether a particular claim is arbitrable is one of law for the court to decide; (3) when deciding whether the parties have agreed to submit a particular claim to arbitration, a court may not rule on the potential merits of the underlying claim; and, importantly, (4) when a contract contains an arbitration provision, there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Id. at 665-666.

{28} The Feldman defendants argue that, based on the plain language of the CAI, Appellant agreed to arbitrate any issue that may arise not only with respect to his new IRA but also his previously existing accounts. Appellant contends that the arbitration agreement applies solely to the newly-opened IRA. In his brief, Appellant argues that because he was not a signatory to any arbitration agreement relating to

the variable rate annuity, a presumption against arbitration arises. Appellant relies on *Council of Smaller Enterprises*, supra, where the Supreme Court of Ohio decided that no party can be required to submit to arbitration when it has not first agreed to do so.

{29} Appellant contends that the test to be applied in this appeal was first announced by the Ohio Supreme Court in *Academy of Medicine of Cincinnati v. AETNA Health Inc.,* 108 Ohio St.3d 185, 2006-Ohio-657, 842 N.E.2d 488. In that case, the Ohio Supreme Court adopted a test articulated by the Sixth Circuit Court of Appeals in *Fazio v. Lehman Bros.*, 340 F.3d 386 (6th Cir.2003), which is "to ask if an action could be maintained without reference to the contract or relationship at issue." *Academy of Medicine of Cincinnati* at ¶6. If it can, the Ohio Supreme Court reasoned, "it is likely outside the scope of the arbitration agreement." Id.

{30} However, the *Fazio* test cannot be applied, here. First, the arbitration clause at issue is admittedly not part of the original contract between the parties, but, instead, arose in a customer account information form signed later as a result of the ongoing relationship between the parties. Although the CAI was completed during the processing of the IRA, the plain language of the CAI states that it governs the new relationship between the parties and/or it updates an existing relationship as a result of a new account or accounts. Thus, the *Fazio* test is unworkable in this case because it subverts the very question raised by this appeal, that is, whether the language of the CAI relates back to the preexisting accounts.

{31} General contract law requires a court to interpret a contract so as to carry out the intent of the parties. *Foster Wheeler Envireresponse, Inc. v. Franklin Cty.*

*Convention Facilities Auth.* (1997), 78 Ohio St.3d 353, 678 N.E.2d 519. "[T]he intent of the parties to a contract resides in the language they chose to employ in the agreement." *Shifrin v. Forest City Ent., Inc.* (1992), 64 Ohio St.3d 635, 638, 597 N.E.2d 499.

**{32}** If the terms of a contract are unambiguous, the trial court may not interpret the contract in a manner inconsistent with those terms. *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 374 N.E.2d 146. Contractual terms are ambiguous if the terms are reasonably susceptible to more than one interpretation. *U.S. Fid. & Guar. v. Aultman St. Elizabeth Med. Ctr.* (1999), 129 Ohio App.3d 45, 55, 716 N.E.2d 1201. When the trial court finds an ambiguity in a contract, the court may look to extrinsic evidence to determine the parties' intent. Id. at 55-56, 716 N.E.2d 1201.

**{33}** If a contract is clear and unambiguous, then its interpretation is a matter of law that we review de novo. *Nationwide Mut. Fire. Ins. Co. v. Guman Bros. Farm* (1995), 73 Ohio St.3d 107, 108, 652 N.E.2d 684. However, if the contract is ambiguous, ascertaining the parties' intent constitutes a question of fact. *Crane Hollow, Inc. v. Marathon Ashland Pipe Line, LLC* (2000), 138 Ohio App.3d 57, 74, 740 N.E.2d 328. Because Appellant did not make a jury demand with respect to the arbitration agreement, we cannot reverse a factual finding of the trial court so long as some competent, credible evidence supports it. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 376 N.E.2d 578, at syllabus.

**{34}** Appellant correctly argues that the CAI form is ambiguous. Initially, we note that the "Update" box on the CAI is checked, which appears to indicate that the form addresses both the new account and the preexisting accounts. On the other hand, under the "Account Type" section, only the "Traditional IRA" box is marked, the "Variable Account" box is not. However, it can be argued that the "Traditional IRA" box is marked for the purpose of updating the existing list of accounts.

**{35}** Next, the text of the arbitration agreement reads, in part, "[i]n consideration of opening one or more accounts for the undersigned, the undersigned agree(s) that any controversy between us arising out of or relating to my (our) account, transactions with or for me (us), or this agreement or the breach thereof shall be settled by arbitration* * *." Although the CAI form includes alternative language in the event that there is more than one account holder, and alternative language in the event that more than one account is being opened when the form is completed, the form includes no such alternative language regarding new and pre-existing accounts. The Feldman defendants argue that the "one or more accounts" language refers to pre-existing accounts as well as newly opened accounts. However, this language may also be reasonably interpreted to refer solely to the situation where the undersigned is opening more than one account when he or she completed the form, as Appellant urges.

**{36}** The rules of construction to be applied in this case are also at odds. A court must construe a contract against its drafter. *Cent. Realty Co. v. Clutter* (1980), 62 Ohio St.2d 411, 406 N.E.2d 515. However, Ohio courts have as earlier stated,

favored arbitration and have given a broad construction to arbitration clauses employing the language "any controversy regarding this agreement."  See e.g., *Lowe v. Oster Homes*, 9th Dist. No. 05CA008825, 2006-Ohio-4927, ¶12.

**{37}**  Ambiguous contracts are by their very nature susceptible to competing interpretations.   Because the CAI appears to be ambiguous, while Appellant is correct that the trial court could have interpreted the language in the manner he argues, we also recognize that the language of the agreement is very broad and encompassing.  The language in the CAI is readily susceptible to the trial court's interpretation that it encompasses both newly opened and pre-existing accounts.  The record reflects that there is competent, credible evidence supporting the trial court's conclusion that the issues raised in the complaint are subject to the arbitration clause.  Accordingly, Appellant's first assignment of error is overruled.

**{38}**  For the purpose of clarity, the remaining assignments of error are addressed out of order.

<u>ASSIGNMENT OF ERROR NO. 3</u>

**{39}**  "The trial court erred in failing to allow discovery or conduct an evidentiary hearing before staying the case and compelling arbitration."

**{40}**  By its terms, R.C. 2711.03 requires a hearing on the motion to compel arbitration.  A hearing on a R.C. 2711.02 motion to stay is discretionary with the trial court.  *Maestle,* ¶19.  The Feldman defendants cite R.C. 2711.02 in their motion before the trial court and in their brief on appeal.  Consequently, they rely exclusively on the rule announced in *Maestle* to argue that the hearing in this case was

discretionary with the trial court. However, the Feldman defendants moved the trial court to both stay the case and to compel arbitration, hence the matter is governed by mandatory hearing language in R.C. 2711.03.

{¶41} Notably, Appellant did not request a hearing in this case. At least three Ohio courts have held that a party waives the right to a R.C. 2711.03 hearing if he or she does not request a hearing. In reaching that conclusion, however, the courts relied on additional facts, such as: the waiving party was permitted to conduct discovery, *Eagle v. Fred Martin Motor Co.,* 157 Ohio App.3d 150, 2004-Ohio-829, 809 N.E.2d 1161, ¶22; the waiving party did not request discovery, *Mattox v. Dillard's, Inc.* 8th Dist. No. 90991, 2008-Ohio-6488, ¶15; the waiving party filed a motion for summary judgment. *Liese v. Kent State University,* 11th Dist. No. 2003-P-0033, 2004-Ohio-5322 ¶44.

{¶42} Here, Appellant requested discovery in his response to the motions, but the trial court never ruled on the request. The trial court ultimately reviewed the arbitrability issue on briefs, and permitted Appellant to offer his own affidavit in support of his opposition brief to the motion to compel arbitration. The Eighth District has held that a party is "heard" for the purposes of R.C. 2711.03 where the trial court accepts his or her affidavit. *Mattox,* ¶15. Because Appellant made no jury demand, by law he submitted the interpretation of the CAI to the trial court. Appellant has not shown that he was prejudiced by the trial court's failure to permit discovery or conduct an oral hearing because this matter rests solely on contract interpretation

and Appellant was allowed, by affidavit, to advance his interpretation of the disputed language. Hence, his third assignment of error is overruled.

ASSIGNMENT OF ERROR NO. 2

{43} "The trial court erred in ordering the case stayed and compelling arbitration, as arbitration had been waived."

{44} As a general rule, either party to a contract of arbitration may waive the contractual right to arbitrate. *Rock v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1992), 79 Ohio App.3d 126, 128. For instance, a plaintiff waives the right to arbitrate by filing a complaint. Id. For the defendant, the right to arbitrate can be preserved by seeking enforcement of the arbitration clause. *Harsco Corp. v. Crane Carrier Co.* (1997), 122 Ohio App.3d 406, 412. Failure to move for a stay pursuant to R.C. 2711.02, coupled with responsive pleadings, will constitute a defendant's waiver. *Peterson v. Crockett Constr.* (Dec. 7, 1999), 7th Dist. No. 99-CO-2, citing *Mills v. Jaguar-Cleveland Motors, Inc.* (1980), 69 Ohio App.2d 111, 113.

{45} To prove that a defending party waived its right to arbitration, a complainant is required to demonstrate that the defending party knew of an existing right to arbitration but acted inconsistently with that right. *Harsco* at 414. "The essential question is whether, based on the totality of the circumstances, the party seeking arbitration has acted inconsistently with the right to arbitrate." Id. at 413-414.

{46} Circumstances which may be considered by the court as pertinent to the issue are: (1) any delay in the requesting party's demand to arbitrate via a motion to stay judicial proceedings and an order compelling arbitration; (2) the extent

of the requesting party's participation in the litigation prior to its filing a motion to stay the judicial proceeding, including a determination of the status of discovery, dispositive motions, and the trial date; (3) whether the requesting party invoked the jurisdiction of the court by filing a counterclaim or third-party complaint without asking for a stay of the proceedings; and (4) whether the non-requesting party has been prejudiced by the requesting party's inconsistent acts. Id. In reviewing a trial court's determination that a party has waived its right to arbitrate, an appellate court must apply an abuse of discretion standard. *Peterson,* supra, at *3.

{47} Appellant cites *Peterson*, supra, for the proposition that the Feldman defendants waived their right to arbitration. In *Peterson*, the cases pended for eleven months, during which time the defendant filed counterclaims, a jury demand, and responses to discovery requests. The record reflects that, here, the Feldman defendants filed motions for leave to plead before filing the motion to compel arbitration. The motion to compel arbitration was filed early in the litigation, and Appellant has not established that he suffered prejudice. Appellant's second assignment of error is overruled.

ASSIGNMENT OF ERROR NO. 4

{48} "The trial court erred in staying the case as to New York Life Insurance and Annuity Corporation."

{49} At least two Ohio appellate courts have recognized that a defendant who is not a party to the arbitration agreement can obtain a stay of litigation pending arbitration. *Scotts Co. v. Warburg* (November 15, 2000), 3d Dist. No. No. 14-2000-

19; *DH-KL Corporation v. Stampp Corbin* (August 12, 1997), 10th Dist. No. 97APE02-206. Both Courts adopted the reasoning in *Air Freight Services, Inc. v. Air Cargo Transport, Inc.* (N.D.Ill.1996), 919 F.Supp. 321. Although the *Air Cargo* case was decided under the Federal Arbitration Act, the language is virtually identical to the Ohio statute.

{50} In this case, Appellant contends that the Feldman defendants represented that the transfer of his annuity from the Hartford to New York Life would be accomplished within 48 hours after the execution of the paperwork and that the value of the annuity would be frozen as of October 2, 2008. Because any potential liability on the part of New York Life is directly related to the representations made by the Feldman defendants, the trial court did not err in staying the entire matter until the claims against the Feldman defendants are resolved through arbitration. Thus, Appellant's fourth assignment of error is overruled.

{51} In conclusion, Appellant submitted the interpretation of the arbitration clause in this case for a determination by the trial court. The trial court's interpretation of the clause must be affirmed if it is supported by competent, credible evidence. The CAI is ambiguous, and is susceptible to the interpretations offered by both Appellant and the Feldman defendants. The trial court resolved the matter on briefs, but permitted Appellant to offer his own affidavit in support of his opposition brief. Because the matter involves contract interpretation alone, Appellant has failed to demonstrate that he suffered prejudice as a result of the trial court's refusal to permit additional discovery or failure to hold an oral hearing on the motion to compel.

Finally, the Feldman defendants timely filed the motion to compel in this case. Accordingly, the judgment of the trial court staying the matter as it pertains to the Feldman defendants and ordering the parties to submit the matter to arbitration is affirmed. Moreover, Appellant's claims against New York Life are dependent upon their claims against the Feldman defendants. Hence, the judgment of the trial court staying the proceedings against New York Life pending the outcome of the arbitration is also affirmed.

Donofrio, J., concurs.

DeGenaro, J., concurs.